IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL RAYMOND JORDAN,

        Petitioner,

    v.

BRIAN BELLEQUE,

        Respondent.

Civil No. 06-1791-MO

OPINION AND ORDER

    Kristina Hellman
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    John R. Kroger
    Attorney General
    Summer R. Gleason
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

///

    1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying convictions for Attempted Murder with a Firearm and Assault in the First Degree with a Firearm. For the reasons which follow, the Amended Petition for Writ of Habeas Corpus (#28) is denied.

## BACKGROUND

In December 1999, petitioner was living with his girlfriend, Sarah Klinebough, and her two children. Danny Nash, the victim in this case, was the property manager at the apartment complex where petitioner and Klinebough lived. On December 18, Klinebough called Nash and asked him if he would be willing to fix her automobile which was located at petitioner's grandparents' home. Nash agreed to retrieve the car that evening, intending to work on it the following day. Respondent's Exhibit 103, p. 30.

Nash drove Klinebough to her car and was attempting to hook the car up to his truck so he could tow it to his residence. *Id* at 160. Petitioner arrived in his own vehicle, got out of his car, drew a firearm, and fired shots at Nash who was still in the process of trying to hook the tow chain to the tow bar on his truck. *Id* at 37, 59, 162-63. One of the bullets shattered Nash's femur, another struck him below his right hip, and the last bullet hit him below his right kneecap. *Id* at 37, 48, 49, 135. Nash

Case 3:06-cv-01791-MO    Document 44    Filed 04/03/09    Page 3 of 13

yelled for someone to call 911, prompting petitioner's grandparents to come out of their home before returning inside to summon the police. *Id* at 38-39. At that point, Nash stuck his head out from under the car to ask petitioner why he had shot him. Petitioner, who stood no more than three feet away, pointed the gun at Nash's head and pulled the trigger. *Id* at 40. Fortunately, the gun did not discharge. Klinebough grabbed the gun from petitioner and returned it to him when he promised not to fire the weapon again. *Id* at 176-77, 181, 185.

Petitioner fled the scene but was apprehended approximately four hours later. Police officers found a .357 caliber firearm in his waistband and a small Derringer firearm on a cord around his leg. *Id* at 93, 105-07. During his first conversation with the police, petitioner informed them that he shot Nash because he was assaulting Klinebough. *Id* at 109. The deputy who interviewed Klinebough immediately after the shooting did not observe any injuries which might indicate that Klinebough had been assaulted.[1] *Id* at 100, 219.

Two days after petitioner's first conversation with police, he told authorities for the first time that Nash had a gun and was attempting to shoot him. *Id* at 227-28. On the same day, a relative of petitioner's informed the police that, according to

---

[1] Klinebough testified that Nash never assaulted her. Trial Transcript, p. 163.

3 - OPINION AND ORDER

petitioner, Nash kept a gun on a magnet stuck to the bottom of his pickup truck. *Id* at 216. Although deputies searched for any trace of the gun, they were unable to locate it and were further unable to find a blood trail to suggest that Nash moved the gun from his truck to hide it. *Id* at 235-36, 245-46.

During the course of defense counsel's investigation of the case, he sent an assistant investigator, Susan Barney, to speak with Tony Hoover. Hoover owned the apartment building managed by Nash where petitioner lived with Klinebough. Respondent's Exhibit 114. According to Barney's notes of her interview with Hoover, he "stated that a few days after the shooting, Sarah had told him about the events of the evening of December 18, 1999. One of the things [Klinebough] said was that she saw Dan Nash had a gun and Dan Jordan shot Nash in self defense." *Id.*

Barney had previously spoken to Klinebough, and Klinebough had indicated that she did not see a weapon in Nash's hand during the encounter. *Id* at 2. However, in light of Barney's interview with Hoover, trial counsel met with Klinebough a second time to hear her version of events and to determine what, exactly, she had told Hoover. Consistent with her statement to Barney, Klinebough advised counsel that she had not seen Mr. Nash with a gun. "She also informed [counsel] that she did not tell Mr. Hoover that she had seen Nash with a gun. She did recall talking to Mr. Hoover about the case. She advised [counsel] that she may have told Mr.

4 - OPINION AND ORDER

Hoover that [petitioner] had seen Mr. Nash with a gun." Respondent's Exhibit 119, pp. 2-3. This account was not only consistent with the prior account she had given Barney, but was also consistent with the accounts she gave to the police detectives and the testimony she would give at trial. *Id.*

At petitioner's trial, Nash testified that he did not threaten petitioner, did not own a gun, and did not have a gun with him on the evening that petitioner shot him. *Id* at 38, 51, 64. Klinebough testified she did not see Nash with a gun during the night of the shooting, and had never seen him with a gun at any time. *Id* at 181. Trial counsel elected not to call Hoover to impeach Klinebough's testimony because she had consistently told the same story, counsel was satisfied with her credibility, and he did not believe any advantage would have been gained by presenting Hoover's impeachment evidence. Respondent's Exhibit 119, pp. 2-3.

Petitioner testified that he shot Nash in self-defense, only firing when Nash brandished a weapon in a shooter's stance. Trial Transcript, p. 324. He claimed that he stepped in front of Klinebough to protect her, before he and Nash simultaneously discharged their respective weapons. *Id* at 324. The jury did not believe petitioner's version of events and convicted him of Attempted Murder with a Firearm and Assault in the First Degree with a Firearm. The trial court sentenced him to two consecutive

5 - OPINION AND ORDER

90-month terms, and also imposed consecutive firearm enhancement penalties. Respondent's Exhibit 101.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review. *State v. Jordan*, 175 Or. App. 554, 29 P.3d 628 (2001), *rev. denied*, 333 Or. 260, 39 P.3d 193 (2002).

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR trial court denied all of his claims. Respondent's Exhibits 121-123. The Oregon Court of Appeals affirmed the PCR trial court's decision without a written opinion, and the Oregon Supreme Court denied review. *Jordan v. Czerniak*, 206 Or.App. 237, 136 P.3d 757, *rev. denied*, 341 Or. 579, 146 P.3d 884 (2006).

Petitioner filed two subsequent PCR actions based on the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296 (2004). The Oregon courts denied relief on petitioner's *Blakely* claims as well. Respondent's Exhibits 132, 137-144.

Petitioner filed his Amended Petition for Writ of Habeas Corpus on April 28, 2008 raising claims of ineffective assistance of trial and appellate counsel, as well as claims of trial court error. Respondent asks the court to deny relief on the Amended Petition because: (1) most of petitioner's claims were not fairly presented to Oregon's state courts and are now procedurally

6 - OPINION AND ORDER

defaulted; and (2) the PCR trial court's decision pertaining to petitioner's fairly presented claims is entitled to deference.

## DISCUSSION

### I.  Standard of Review.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (20000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but

7 - OPINION AND ORDER

unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

Petitioner contends that the PCR trial court's decision is not entitled to deference because that court erroneously required him to prove his claim by a preponderance of the evidence standard, finding that "Petitioner has failed to prove any of his claims by a preponderance of the evidence." Respondent's Exhibit 122, p. 5. ORS 138.620(2) governs the burden of proof in Oregon's PCR proceedings, and requires only that "[t]he burden of proof of **facts** alleged in the petition shall be upon the petitioner to establish such **facts** by a preponderance of the evidence." ORS 138.620(2) (emphasis added). Oregon law does not require PCR courts to misapply any governing legal standards, and the PCR trial court did not do so in petitioner's case. The PCR trial court merely applied the preponderance of the evidence standard to the facts of the case as it was required to do. Courts have repeatedly held that litigants seeking to prevail in a PCR proceeding must prove the facts of their case by a preponderance of the evidence. *Holland v. Jackson*, 542 U.S. 649, 654 (2004); *Alcala v. Woodford*, 334, 862, 869 (9th Cir. 2003); *Davis v. Woodford*, 333 F.3d 982, 991 (9th Cir. 2003). The court therefore lends deference to the state court

8 - OPINION AND ORDER

decisions as required by the Anti-Terrorism and Effective Death Penalty Act.

## II. <u>Unargued Claims</u>.

Petitioner elects to offer briefing in support of a single sub-claim within Ground One: whether trial counsel was ineffective when he failed to call Hoover to impeach Klinebough's testimony. He submits his seven remaining claims for the court's consideration on the existing record.  The court finds that petitioner's remaining claims do not entitle him to habeas relief. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims); *see also* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

## II. <u>Ground One: Counsel's Failure to Call Impeachment Witness</u>.

Petitioner asserts that his trial attorney was constitutionally ineffective for failing to call Hoover to impeach Klinebough.  According to petitioner, Hoover would have testified that Klinebough told him that she saw Nash with a gun and that petitioner shot in self-defense, a statement which was inconsistent with Klinebough's trial testimony that she never saw Nash with a firearm.  Petitioner contends that impeachment of Klinebough was

critical because she was the only third-party witness to the violent confrontation.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696.

The PCR trial court made the following factual findings when it denied petitioner's ineffective assistance of counsel claim:

> 4. Ms. Klinebaugh, a witness to the shooting, told Detectives Vorbert and Rylander on December 20, 1999, that she did not see the victim, Mr. Nash, with a gun at the time of the shooting. Ms. Klinebaugh also told Mrs. Susan Barney, Vern Meyer's assistant, on May 11, 2000, that she did not see the victim with a gun at the time of the shooting. Ms. Klinebaugh told the defense investigator and trial counsel that she did not see the victim with a gun at the time of the shooting.

10 - OPINION AND ORDER

>    Ms. Klinebaugh also told trial counsel that she never told Mr. Tony Hoover that the victim had a gun at the time of the shooting. Ms. Klinebaugh testified at trial consistently with the statements she gave to the Detectives, trial counsel, and to petitioner's investigator. There is no credible evidence to support petitioner's claim that the victim had a gun at the time petitioner shot the victim. Petitioner's claim in that regard lacks credibility.
>
> 5.  Petitioner claims that trial counsel should have called Tony Hoover as a witness at trial. Even if counsel had called Tony Hoover as a witness at trial, Mr. Hoover's testimony would not have been admissible as substantive evidence but merely as impeachment evidence against Ms. Klinebaugh. Petitioner has not submitted an affidavit in this proceeding from Mr. Hoover regarding what he would have said if he had been called to testify at trial.

Respondent's Exhibit 122, pp. 3-4.

Petitioner asserts that counsel's explanation for failing to call Hoover to introduce Klinebough's prior inconsistent statement was based on his misunderstanding of the value and importance of impeachment evidence. However, as the PCR trial court found, petitioner did not present it with an affidavit from Hoover regarding what he would have testified to had he been called. Instead, he had only the notes of counsel's investigator which counsel found to not be accurate following his own, subsequent investigation. In the absence of an affidavit from Hoover, there is insufficient evidence to conclude that he would have testified, and that he would have testified to the facts as noted by Barney. *See* U.S. v. Harden, 846 F.2d 1229, 1230-31 (9th Cir. 1988) (record

11 - OPINION AND ORDER

must contain evidence that had a witness been called, he would have testified); *See Horn v. Hill*, 180 Or. App. 139, 148-49, 41 P.3d 1127 (2002) ("Where evidence omitted from a criminal trial is not produced in a post-conviction proceeding . . . its omission cannot be prejudicial"); *cf. Dows v. Wood,* 211 F.3d 480, 486-87 (9th Cir. 2000) (petitioner's self-serving affidavit regarding potential testimony of another is insufficient to prove ineffective assistance of counsel).

In addition, counsel's characterization of Hoover's potential testimony as not helpful appears to be accurate given the consistent story Klinebough told. She made two separate statements to petitioner's defense team which were consistent, and indicated that Hoover had misunderstood what she said. Those statements were also consistent with the two statements she provided to law enforcement officers. Finally, her trial testimony was consistent with all of these prior statements.

Moreover, the impeachment evidence at issue in this case was especially weak given: (1) petitioner first told the police he shot Nash because he was assaulting Klinebough, but later elected to abandon this story; (2) petitioner did not mention Nash's alleged possession of a firearm when he was taken into custody on December 18, 1999, first raising the topic on December 20; (3) despite searches by the police and petitioner's defense team, no one ever found evidence that Nash possessed a weapon; (4) when Nash was

12 - OPINION AND ORDER

shot, the medical evidence showed that the entry wounds were from behind as his leg was bent, consistent with Nash's version of events that he was attempting to hook up tow chains to Klinebough's car when petitioner shot him from behind. Trial Transcript, pp. 134-135.

For all of these reasons, any potential impeachment evidence from Hoover would have made no difference in the outcome of petitioner's trial. As such, the PCR trial court's decision on his ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus is DENIED.

IT IS SO ORDERED.

DATED this  2  day of April, 2009.

                                 /s/Michael W. Mosman
                                   Michael W. Mosman
                                   United States District Judge

13 - OPINION AND ORDER